## THE SURSUM CORDA.

District Court, S. D. New York. December 30, 1926.

**1. Customs and usages ☞17—Custom cannot be pleaded to vary terms of unambiguous charter party.**

Where the meaning of the words used in a charter party is clear, custom cannot be pleaded to vary its terms.

**2. Shipping ☞50—Requirement of charter party that cargo should be taken from "alongside" by charterer held not to require ship to bear cost of placing in storage.**

Provision of charter party, requiring cargo to be taken from "alongside" by charterer, cannot be construed to require the ship to bear the expense of placing it in storage, nor can a custom of the port be shown to extend its meaning.

[Ed. Note.—For other definitions, see Words and Phrases, Alongside.]

In Admiralty. Suit by Salvatore and Emanuele Flli. Accame, owners of the steamship Sursum Corda, against 13,986 bales of cork shavings; Lawrence Johnson & Co., claimant. On exceptions to answer. Exceptions sustained.

Loomis & Ruebush, of New York City, for libelants.

Burlingham, Veeder, Masten & Fearey, of New York City (William J. Dean, of New York City, of counsel), for claimant.

AUGUSTUS N. HAND, District Judge. The libel alleges that the libelants are the owners of the steamship Sursum Corda; that the libelants entered into a charter party with the claimant whereby they chartered to the claimant the steamship Sursum Corda to carry a cargo of cork from Portimao and Lisbon, Portugal, to the port of New York; that pursuant to the terms of the charter party the steamship proceeded to Lisbon and took on board 13,986 bales of cork and thereafter proceeded to carry the same to New York; that the charter party, among other clauses, contained a provision requiring the consignee of the cargo to take delivery from alongside of the ship at the consignee's risk and expense, and that upon arrival at New York the consignee failed to take delivery as it was required to do, whereupon, in order to discharge the steamer, the libelants were obliged to incur extra expense in getting the cargo from alongside the steamer to a place of storage, thereby sustaining damages in amount of $1,500 as a result of the failure of the consignee to take the cargo from alongside the vessel as was required by the charter party.

In the answer, the claimant set forth that the charter party attached to the libel required the Sursum Corda to proceed to New York "to the usual owner's berth to discharge"; "lighterage if necessary to be at the expense and risk of the charterers at the loading port only," "the discharging to be effected as fast as steamer can deliver as customary during working hours, weather permitting, Sundays and holidays excepted," and "the taking from the hold and the delivery from alongside to be done by the owner's stevedores."

The answer further alleged that the Sursum Corda, on arrival at New York, berthed at a pier leased by her owners and there discharged and stored the cargo libeled herein; that at all the times mentioned in the libel it was the custom of the port of New York for vessels discharging such cargo at their own pier to discharge the same on the pier and to make delivery from the pier to the consignee, which custom was incorporated in the charter party of the Sursum Corda, and her owners became bound to bear the expenses claimed in the libel.

Article 7 of the charter party, which is the main one in question, was part of a printed form originally reading as follows:

"Art. 7. The cargo to be brought alongside and taken from alongside at merchants' risk and expense.

"The receiving alongside and stowage in hold to be done by charterers' men, the steamer paying the current rate. The taking from the hold and delivery from alongside to be done by the receivers' people, the steamer paying the current rate. * * *"

Article 7, as appearing in the charter party, read as follows:

"Art. 7. The cargo to be brought along-

side and taken from alongside at merchants' risk and expense. The receiving alongside and stowage in hold at Portimao to be done by charterers' men, the steamer paying the current rate, and at Lisbon by the owners' stevedores. The taking from the hold and the delivery from alongside to be done by owners' stevedores. * * * "

The libelants have excepted to the portion of the answer which I have referred to, on the ground that it fails to set forth facts sufficient to constitute a defense to the libel.

[1] It seems clear from the terms of the contract that the cargo was to be "taken from alongside" at the claimant's expense. The real question, therefore, is whether there is any doubt in view of the terms of the charter party, a copy of which is annexed to the libel, as to the meaning of the words "taken from alongside." If the meaning is clear, custom cannot be pleaded to vary the terms. It is evident that the obliteration of the words in the printed form, "receivers' people, the steamer paying the current rate," and the substitution of the words "owners' stevedores," do not affect the person who shall bear the expense. The change seems to relate to the stevedores who are to perform the manual labor.

[2] "Alongside" has been frequently construed, and has never been taken to embrace stowage in a warehouse. Such an interpretation would be quite contrary to the decision of the House of Lords in the case of Palgrave Brown & Son, Limited, v. S. S. Turid (1922) 1 App. Cas. 397. There it was held that a custom of the port could not be proved to impose upon the owner the expense of providing a staging and of carrying cargo across it to the quay which was twelve feet from the steamer's side. The contract in that case provided: "The cargo to be brought to and taken from alongside the steamer at charterers' risk and expense as customary." The court held that the words "as customary" related to the mode of delivery and not to the incidence of the expense. Lord Birkenhead said:

"Whatever may be the locality indicated by the words 'alongside the steamer always afloat,' it can hardly be a spot on dry land, in this instance about 8 yards away from the ship's rail and about 3½ yards from the water on which she floats."

Lord Sumner said:

"Though the ship was in a position in which she was entitled to require the process of delivery to begin, the merchants say that they were duly taking the cargo from alongside the steamer, though they could not reach the steamer from their selected spot, nor could the ship's stevedores reach it from the steamer without the interposition of a temporary structure and of a new form of transport by manhandling the timber. I am unable to reconcile this with being alongside the steamer; the steamer being where she was entitled to be at the commencement of the process of delivery. The fact is the steamer is the starting point. It is from her side that the extension is to be measured, which ultimately reaches the customary spot, and, when the extension involves 13 feet of water, bridged by a staging, and at least 10 feet of quay, traversed by porters, I think the spot is too far away."

The foregoing case presented much stronger facts for the charterer than the present one because the words in article 6 of the charter party sued upon here only mention custom in connection with lay time and demurrage, whereas in the Palgrave Case the words were: "The cargo * * * to be brought to and taken from alongside the steamer at the charterers' risk and expense as customary." Even such a distinguished author and experienced maritime judge as Scrutton, L. J., apparently felt doubt as to whether the words "as customary" did not affect the incidence of the expense as well as the means of doing the work. But in the present case there seems no basis for such a contention.

The case of Turnbull v. Citizens' Bank of Louisiana (C. C.) 16 F. 145, is in accord with the foregoing, and I think nothing in the opinion of Judge Brown in the case of Seager v. New York & Cuba Mail S. S. Co. (D. C.) 55 F. 324, affirmed in (C. C. A.) 55 F. 880, is to the contrary. In the latter case the clause was: "Cargo shall be received and delivered alongside of the vessel * * * within reach of her tackles"—and the custom related to the placing of the cargo on the dock within the range indicated, and therefore in no way contravened the terms of the charter party.

The exceptions are sustained.