## THE NO. 34.

### Petition of L. BOYER'S SONS CO.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 238.

**1. Judgment ⬦828(3)—State court judgment, relieving owner of lighter from liability for injuries to stevedore's employee, held not binding on stevedore, so as to preclude latter from recovering indemnity from owner for amount of judgment paid by stevedore (Civil Practice Act N. Y. § 264).**

Under Civil Practice Act N. Y. § 264, state court judgment, holding owner of lighter free from liability to injured employee of codefendant stevedore, engaged to discharge cargo into lighter, did not bind stevedore, so as to preclude latter from recovering indemnity from owner as one primarily liable for amount of judgment paid by stevedore by answer to owner's libel for limitation of liability, though stevedore made no demand for determination of defendant's rights as between themselves or service of cross-answer by stevedore on owner.

**2. Indemnity ⬦13(1)—Stevedore, for whose employees owner of lighter contracted to provide safe access thereto, is entitled to indemnity from owner for amount paid to satisfy state judgment for employee, injured because of owner's neglect.**

Stevedore, for whose employees owner of lighter contracted to provide safe access thereto, is entitled to full indemnity from such owner for amount stevedore had to pay in satisfaction of state judgment for injuries to employee by reason of owner's neglect; owner being primarily liable.

**3. Shipping ⬦84(3¼)—Vessel owner, engaging stevedore to load her, must furnish latter's men safe place to work and safe passage thereto.**

It is the duty of the owner of a vessel, who has engaged a stevedore to load her, to furnish the latter's men with a safe place to work and a safe passage thereto.

**4. Shipping ⬦113—Owner of ship, discharging into lighter, performs ordinary duty by putting goods over rail in position for consignee to take delivery.**

Owner of ship, discharging cargo into lighter, discharges his ordinary duty by putting goods over rail of ship in such position that consignee can take delivery thereof, in absence of special contract to contrary.

**5. Shipping ⬦209(3)—Evidence on lighter owner's petition for limitation of liability for injury to stevedor's employee held to show that stevedore contracted for delivery of ship's cargo over rail in position for lighter to take it.**

On petition by owner of lighter for limitation of liability for injuries to employee of stevedore, engaged to discharge ship's cargo into lighter, evidence held to show that stevedore contracted for ship to deliver cargo over rail in such position that lighter could take it, and for lighter to take delivery and stow cargo.

**6. Shipping ⬦84(3¼)—That stevedore usually performs duty to furnish men safe access to work, by borrowing ladder from ship discharging cargo into lighter, does not affect latter's obligation to furnish safe means of access thereto.**

Stevedore's duty to furnish his men a safe mode of access to work, which he usually does by borrowing first ladder available, generally from ship discharging cargo into lighter, does not affect lighter's obligation to furnish men coming on it to receive and stow cargo a safe means of access.

**7. Shipping ⬦84(3½)—Ship held not bound to install ladder for access to lighter, on which stevedores were to receive and stow cargo for owner thereof.**

Ship discharging cargo into lighter was under no duty to install a ladder to afford access to lighter, on which stevedores were to receive and stow cargo for owner of lighter.

**8. Shipping ⬦84(3½)—Lighterman, insecurely lashing ladder to ship, held to have invited stevedore's employee to descend it, thereby rendering master of lighter liable for resulting injuries.**

Lighterman, failing to get ship's ladder, which was lying nearby, and substituting his own ladder, which he insecurely lashed to ship in position for stevedore's employees to come aboard lighter, as three of them did without protest, in effect invited fourth employee, whom he gave no warning of danger, to descend ladder, so as to render master of lighter liable for resulting injuries to such employee.

**9. Judgment ⬦828(3)—State judgment against stevedore for injury to employee precluded codefendant owner of lighter from questioning cause of injury and damage to amount recovered.**

Judgment in state court against stevedore for injuries to employee precluded codefendant owner of lighter from questioning that such employee was injured while using due care, by falling from ladder not sufficiently secured to bear his weight, and suffered damage to amount for which recovery was had.

**10. Shipping ☞84(3½)—Owner of lighter held primarily at fault for injury to stevedore's employee by fall from ladder insecurely lashed to ship's side by lighterman.**

Lighter owner, whose duty it was to receive cargo from ship's tackle and give safe access to lighter, when stevedore as such owner's agent sent employees on board to receive and stow cargo, *held* primarily at fault for injury to employee by fall to deck of lighter, because of lighterman's failure securely to lash ladder to ship.

**11. Shipping ☞207—Owner of lighter held entitled to limit liability for injuries to stevedore's employee by fall to deck of lighter from ladder insecurely lashed to ship by lighterman.**

Owner of lighter *held* entitled to limit liability for injuries to employee of stevedore, engaged to discharge ship's cargo into lighter, by fall from ladder insecurely lashed to ship by lighterman for stevedore's employees to descend to deck of lighter; there being no showing of personal contract by owner of lighter to pay damages.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the petition of the L. Boyer's Sons Company for limitation of liability, as owner of the lighter No. 34, for injuries to Joseph Miller, an employee of T. Hogan & Sons, Inc., claimants. From a final decree (23 F.[2d] 201) exonerating petitioner from all liability, claimant appeals. Reversed, and claim allowed, with right of petitioner to limit its liability.

Appeal by the claimant T. Hogan & Sons, Inc., from a final decree in admiralty by the United States District Court for the Southern District of New York exonerating the petitioner from all liability arising out of an accident to one Joseph Miller. Reversed.

One Joseph Miller was an employee of T. Hogan & Sons, stevedores, who had been engaged by the owners of the steamship Stanley to discharge its cargo of sugar into the lighter No. 34, which belonged to L. Boyer's Sons. The lighter was made fast to the offshore side of the steamer, and the only means of access to the lighter was by going on and across the steamer and by ladder down to the lighter, which was considerably lower than the deck of the ship. Boyer also employed T. Hogan & Sons to stow the sugar on the lighter after it was delivered by the steamship company. A gang of stevedores working for T. Hogan & Sons was on the ship to discharge the sugar and another gang of Hogan's was sent to the lighter to receive the cargo from the slings and stow it on the lighter.

Boyer testified (folio 117):

"It has been the practice, or was the universal custom, that a stevedore who was discharging the ship represents the ship in discharging to the lighter, in this much, that it is the duty of the ship when discharging overside onto the lighter to deliver the draft onto the deck of the lighter, when the stevedore had to take it out of the hold of the ship in slings and drop it over onto the lighter, and then unhook his sling; and that is his duty to the ship. Then the next draft comes up, and it has been the custom for years back to hire the stevedore at such an agreed rate to pile it up on the lighter after it has been delivered on the boat, and for that we pay a certain sum. We don't really know who he is until we get the bill for the cargo, it may be a week or ten days afterwards."

" * * * There was an agreement that on all ships that Hogan was stevedoring he was to do the stowing on our boats, and we were to pay him. In this year we had been handling a lot of sugar and Hogan had been stowing the sugar. * * * I had an agreement with him, because he had done it before, and I couldn't say he didn't have an agreement" (folios 121, 122).

Miller was sent by Hogan to work on the lighter. He started to go down a ladder from the deck of the ship to the lighter. This ladder had been lashed by the master of the lighter in such an insecure way that it turned while Miller was descending, and he was precipitated to the deck of the lighter and suffered injuries. The master of the lighter testified that the ladder belonged to him personally and was installed for his private use in boarding the lighter. There was evidence that the stevedores had on a prior day used the ship's ladder which was not in place on the day of the accident and that stevedores commonly borrowed ships' ladders for boarding lighters upon which cargo was to be discharged. There was a conflict in the testimony as to whether the ladders used on such occasions were furnished by the ship or the lighter, but the greater number of witnesses testified that there was a custom that the ship should furnish the ladder.

Miller brought an action at law in the state court against both Hogan and Boyer to recover damages for his injuries and based his claim upon negligence in providing safe access to the lighter, the place where Miller was going to work. He recovered a verdict for $22,500 against Hogan, on which a judgment was entered that was thereafter paid by Hogan. The jury rendered a verdict for Boyer on the cause of action against him.

Hogan served no cross-answer in the state court action seeking to recover indemnity from Boyer, but afterwards sought to secure indemnity in this proceeding in admiralty by answer to the libel filed by Boyer as owner of lighter No. 34 for limitation of liability. In his answer in the limitation proceeding Hogan alleged that Boyer was liable to him upon the implied warranty in the contract engaging Hogan to perform work on Boyer's premises that a safe means of access to the lighter would be provided.

The District Court held that, even though the judgment in the state court exonerating Boyer did not bar Hogan from obtaining indemnity, yet the lighter was under no duty to furnish a ladder and Hogan in removing the cargo and placing it upon the deck of the lighter was performing the obligation of the ship and not of the lighter, so that on the merits Boyer was entitled to a decree exonerating him from all liability.

Platt, Field & Taylor, of New York City (Eli J. Blair, of New York City, of counsel), for appellant T. Hogan & Sons.

E. C. Sherwood, of New York City (William L. O'Brion and Frederick W. Park, both of New York City, of counsel), for appellee L. Boyer's Sons Co.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). This case raises three questions: (1) Was the judgment of the state court holding Boyer free from liability to Miller binding on Hogan so that he cannot recover indemnity? (2) If not, is Hogan entitled to indemnity because he has shown that Boyer was under a primary duty to furnish Miller with a safe means of access to work? (3) If Boyer was primarily liable to Miller, is Boyer entitled to limit his liability?

[1] The question as to the effect of the judgment of the state court would seem really to be one of New York practice. Section 264 of the New York Civil Practice Act provides that: "Where the judgment may determine the ultimate rights of two or more defendants as between themselves, a defendant who requires such a determination must demand it in his answer, and at least twenty days before the trial must serve a copy of his answer upon the attorney for each of the defendants to be affected by the determination. * * *" No such demand was made, and no cross-answer was served by Hogan on Boyer. That the state court judgment in favor of Hogan

did not bind Boyer is in accord with the decisions of the New York courts. Erie R. Co. v. Buffalo & Lackawanna Traction Co., 220 App. Div. 520, 221 N. Y. S. 680, affirmed by the New York Court of Appeals at 246 N. Y. 625, 159 N. E. 677; Scott v. Curtis, 195 N. Y. 424, 88 N. E. 794, 40 L. R. A. (N. S.) 1147, 133 Am. St. Rep. 811. It is impossible to see how Hogan could have been allowed to show in the state court that Boyer was guilty of neglect or that Miller's injuries were due to the failure to perform a duty which was primarily that of Boyer. If Boyer stood in the relation of one primarily liable (and this relation we hold Hogan is entitled to show here) Hogan is entitled to indemnity notwithstanding the judgment in favor of Boyer in Miller's action in the state court.

This was held by the Circuit Court of Appeals of the Sixth Circuit in the case of City of Owensboro, Ky., v. Westinghouse Church Kerr & Co., 165 F. 385, where a situation existed very similar to that here. There is a recent decision to the contrary by the Circuit Court of Appeals of the Ninth Circuit in Town of Flagstaff v. Walsh, 9 F. (2d) 590, and there are parallel cases in some of the state courts. But we feel precluded from holding that Hogan is bound by the judgment exonerating Boyer, both by the decision of Erie R. Co. v. Buffalo & Lackawanna Traction Co., supra, interpreting the New York law as to the effect of such a judgment, and by what seems to us the logic of the situation.

[2] If Boyer, as between himself and Hogan, was obliged to provide safe access to the lighter for Hogan's men, it cannot be doubted that Boyer was primarily liable and that Hogan was entitled to full indemnity for the amount he had to pay by reason of Boyer's neglect. George A. Fuller Co. v. Otis Elevator Co., 245 U. S. 489, 38 S. Ct. 180, 62 L. Ed. 422; Washington Gas Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712; Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola, 134 N. Y. 461, 31 N. E. 987, 30 Am. St. Rep. 685; Grand Trunk Ry. Co. v. Latham, 63 Me. 177; Smith v. Foran, 43 Conn. 244, 21 Am. Rep. 647. The question then is, What was the contract between Boyer and Hogan?

[3, 4] It is the duty of the owner of a vessel who has engaged a stevedore to load her to furnish the men with a safe place to work and a safe passage thereto. The Rheola (C. C.) 19 F. 926; The Saranac (D. C.) 132 F. 936; Pioneer S. S. Co. v. McCann (C. C. A.) 170 F. 873. Consequently, if it was the duty of the owner of the lighter to take the sugar

from the ship's tackles, it was his duty to provide a proper mode of access to his lighter for the stevedores who were to receive the cargo from the slings and stow it on the lighter. And where a ship, as here, was to discharge into a lighter, the shipowner, in the absence of some special contract to the contrary, would fulfill his ordinary duty when he put the goods over the rail of the ship in such a position that the consignee could take delivery of them. As the Master of The Rolls said in Petersen v. Freebody & Co., [1895] 2 Q. B. 294:

"The moment the goods are put within the reach of the consignee he must take his part in the operation. At one moment of time the shipowner and the consignee are both acting —the one in giving and the other in taking delivery; at another moment the joint act is finished. Where goods are slung, and lowered gradually over the side of the ship into a lighter, they cannot all be deposited on the same spot in the same lighter. It is obvious, therefore, that those on board must help in the operation of taking delivery by guiding the thing as it is coming down into the lighter."

A. L. Smith, L. J., also thus stated the general rule in the same case:

"It is contended here, that because the cargo was a cargo of spars the consignees had not to receive the spars until the ship's crew had put them into the bottom of the lighter. If that be so, the case forms an exception to the general rule. But what is there to show that there is any duty on the shipowner to do that which he is not bound to do with respect to any other cargo, namely, to put his crew off the ship and on to the lighter."

See, also, Brenda S. S. Co. v. Green, [1900] 1 Q. B. 518; Palgrave Brown & Son, Limited, v. S. S. Turid, [1922] 1 A. C. 397; Turnbull v. Citizens' Bank of Louisiana (C. C.) 16 F. at page 147; The Sursum Corda (D. C.) 20 F.(2d) 213.

[5] It is apparent from the foregoing that there is a general rule that the duty of the ship ends when she has put the goods over the rail in such a position that the consignee can take delivery of them. In the present case Hogan was employed as a stevedore both by the owner of the ship and by the owner of the lighter, and was to be paid by each for his respective services. In these circumstances, was there any adequate proof of a change in the ordinary rule as to the relative duties of the owner of the ship and the owner of the lighter for each of which Hogan was performing services? The testimony in the limitation proceeding as to the contract was by Russell L. Boyer, a highly interested witness. He said (folios 117 et seq.):

"It has been the practice, or was the universal custom, that a stevedore who was discharging the ship represents the ship in discharging to the lighter, in this much, that it is the duty of the ship when discharging overside onto the lighter to deliver the draft onto the deck of the lighter, when the stevedore had to take it out of the hold of the ship in slings and drop it over onto the lighter, and then unhook his sling; and that is his duty to the ship. Then the next draft comes up, and it has been the custom for years back to hire the stevedore at such an agreed rate to pile it up on the lighter after it 1 .s been delivered on the boat, and for that we pay a certain sum. * * * "

But at the trial of the action in the state court there was also testimony of Boyer which was thereafter introduced in the Limitation Proceeding. He said nothing then about custom, but stated that as Hogan was stevedoring the ship "we made an agreement to load the lighter" (folio 233). He then went on to say:

"The steamer contract was to deliver to me the sugar. I hired T. Hogan & Sons, Inc., to stow the sugar on Lighter 34, after it was delivered by the steamship company" (folio 237).

And he ended by a reply to the following leading question put by his counsel:

"Q. So it was the steamship's job to get it on board the lighter, and then T. Hogan & Sons, Inc., job to stow it after it was on board; so T. Hogan & Sons, Inc., was your subcontractor for the purpose of stowing? A. Yes, sir" (folios 237, 238).

The accident happened to Miller in October, 1920; the trial in the state court was in May, 1922, and the answer of Boyer in that case made no allusion to any contract or custom whereby the ship was to do more than to deliver the cargo over the rail, or Hogan was only to stow the cargo and not to receive it for Boyer from the slings. The only place where such an interpretation of relative duties occurs is in the vague suggestion of it in the leading and argumentative question by counsel put in the mouth of Boyer at the trial in 1922 where counsel said: "So it was the steamship's job to get it on board the lighter? * * * " Not until 1927 when the trial of the Limitation Proceeding came on did Boyer attempt to prove a *custom* which included an obligation on the part of the ship to place the cargo on the lighter and unhook the slings. The only testimony really coming

from the lips of Boyer when he gave his first version of the contract tended in no way to vary the conventional duties of carrier and consignee. What came afterwards was really legal argument given without basis or explanation, to be read in the light of established practice and not to be given the weight of clear evidence. We accordingly hold that the real effect of the testimony is that Hogan contracted for the ship to deliver the cargo over the rail in such a position that the lighter could take it and for the lighter to take delivery and stow the cargo.

[6] But it may be argued that our construction of the contract is contradicted by the evidence that there was a custom that the ship should furnish ladders necessary to afford access to the lighter. Various witnesses testified somewhat to this effect in the Limitation Proceeding. It would seem most probable, however, that the custom relied on meant no more than that the stevedores frequently got ladders from the ship when they desired to board a lighter. Doubtless this was common, but it could hardly affect the relative duties of ships and lighters that the former should allow stevedoring companies to borrow their ladders to go on lighters. The mere fact that the men have to go from the ship to the lighter makes it sometimes a natural thing to borrow a ship's ladder instead of first calling on the lighterman if he has not already put one in place. Boyer's witness Wait said:

"It is generally the custom of the stevedore on the ship, * * * to go to the boatswain on the ship and ask him for a rope, or a Jacob's ladder to put over the side of the ship; and there are other methods which they use" (folio 102).

Boyer's witness Houston testified that "it is the business of the stevedore in all cases to furnish the means of reaching from the ship to the lighter, that he uses the ship's Jacob's ladder for his men, and that there are times when the other ladder is used on a lighter, if it is handy there * * *" (folio 126).

Kelly, another witness for Boyer, said that it is the duty of the stevedore to furnish the ladder but the custom is for him to use the ship's ladder (folio 131).

McGrath, another Boyer witness said: "The custom is that the stevedore uses the steamer's ladders always."

This testimony only amounts to a recognition of the fact that there is always a duty on the part of the stevedore to furnish his men with a safe mode of access to work, and that he usually fulfills it by borrowing the first ladder available, which would generally be from the ship, as he would necessarily be on the ship before coming to the lighter. It does not affect the obligation of the lighter to furnish to the men who come on it to receive and stow cargo a safe means of access.

Moreover, Boyer's lighterman prior to the first trial had signed a written statement saying that Boyer's foreman had instructed him to be ready for the longshoremen to come aboard his lighter. The statement reads:

" * * * I tied up to the Stanley as directed and lashed my wooden ladder to her side so that the men could come aboard my lighter. * * * I watched the longshoremen come down the ladder and three of them came down all right and then as the fourth one, who was a large heavy man, took a step down on the ladder, it turned around with him and fell a distance of about fifteen feet to the deck of my lighter on his back. * * * This ladder that I had tied up to the side of the Stanley was the only ladder there and the only ladder we had to use" (folios 677, 678).

[7, 8] Boyer relies on the duty of the ship to furnish the ladder and the alleged fact that the ladder installed did not belong to Boyer, but was the personal property of the lighterman installed for his convenience. We have shown that the ship had no duty to furnish a ladder, but, if it had any, it was certainly under no duty to install a ladder so as to afford access to the place where the stevedores were to do work for another. Not only did the lighterman fail to get the ship's ladder (which had been used the day before, was used shortly after and was then lying only 12 feet away—folio 451) but the ladder which he called his own he had improperly secured and had placed in a position inviting those who were coming on board to use it. He stated in writing that he lashed it "so that the men could come aboard." He was in charge of the lighter and was the only man on it. He watched three longshoremen descend the ladder and saw Miller follow. He made no sign of protest and gave Miller no warning of any danger. If he should have used the ship's ladder, he failed to do this, but substituted one which he had insecurely lashed, and he in effect invited Miller to descend it. Pioneer S. S. Co. v. McCann (C. C. A.) 170 F. 873. For such neglect on the part of the master of the lighter his principal Boyer is liable. It was the failure of the lighterman to have a safe ladder for the workmen to use that was the primary cause of the accident.

[9, 10] We agree with the District Court that the judgment against Hogan on the former case precludes Boyer, who was a party to the

action, from questioning here "that Miller was injured while using due care, by a fall from the ladder which was not sufficiently secure to bear his weight and that he suffered damage to an amount for which recovery was had" (folio 857). Chicago City v. Robbins, 2 Black (67 U. S.) 418, 17 L. Ed. 298; Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola, 134 N. Y. 461, 31 N. E. 987, 30 Am. St. Rep. 685; Scott v. Curtis, 195 N. Y. 424, 88 N. E. 794, 40 L. R. A. (N. S.) 1147, 133 Am. St. Rep. 811. It remained only to establish in this proceeding that the accident was due to Boyer's primary fault. Such fault was shown because, as we have found, it was the duty of Boyer to receive cargo from the ship's tackle and to give safe access to the lighter when Hogan sent his men on board to receive and stow the cargo as agent for Boyer.

[11] Coming to the question of limitation of liability, there is no showing in this case of a personal contract by L. Boyer's Sons Company such as existed in Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 380, 62 L. Ed. 770; Luckenbach v. McCahan, 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522, and Capitol Transportation Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631.

While there rested on the owner of the lighter the legal obligation to provide safe access to the vessel for all who lawfully came aboard, that obligation was necessarily to be performed through the lighterman, and he, without any knowledge or privity on the part of Boyer, neglected to secure the ladder properly when he installed it. This was a different obligation from the express warranties of seaworthiness in Pendleton v. Benner Line and Luckenbach v. McCahan, or the implied warranty in Capitol Transportation Co. v. Cambria Steel Co., supra, or the agreement in the E. S. Atwood (C. C. A.) 289 F. 737, that the charterer should be "responsible for all damages to vessels * * * on the part of himself or his employees or trespassers." Those decisions involved personal obligations to pay damages in the event that a vessel was unseaworthy or certain other events happened whether the loss arose from a breach of contract or a violation of a duty imposed by law. The default was a personal one, consisting of a failure to pay. That was a matter within the control of the obligor, and was not the breach of a mere promissory obligation to be performed by his servant without his privity or knowledge. Only in the former class of cases have the courts denied limitation of liability, and to that class has the Supreme Court significantly confined so-called "personal contracts." Justice Holmes said, in the Capitol Transportation Case, supra, at page 336 (39 S. Ct. 292):

"We very much appreciate the danger that the act should be cut down from its intended effect by too easy a finding of privity or knowledge on the part of owners, as also by too liberal an attribution to them of contracts as personally theirs. We are not disposed to press the law in those directions further than the cases go."

It would seem that "personal contracts" have thus far been limited to those of the nature of warranties where the obligation was to be performed by the obligor personally and that they have not been extended to promises to do acts necessarily performed through the intervention of others. The Ice King (C. C. A.) 261 F. 897.

Here the negligence of Boyer's lighterman against which he gave no warranty was the primary fault, and Boyer must indemnify Hogan because Hogan's neglect to inspect and discover the insecurity of the ladder was a secondary fault which would have caused no damage if Boyer's lighterman had not originally installed it in an unsafe way. Hogan's right to indemnity is not due to any personal contract of Boyer to indemnify, for he made none, but to the breach of an obligation to furnish safe access to the lighter which, as we have shown, was not to be performed by Boyer personally but by his servant in his absence and without his privity or knowledge. To attribute such obligations to Boyer as his personal contracts would involve theories requiring such an invasion of the Limitation Act that it is hard to see what would remain. We think it clear that Boyer has a right to limit.

The decree is reversed, and the claim of T. Hogan & Sons, Inc., is allowed, with the right of L. Boyer's Sons Company to limit their liability.