## MORAN TOWING & TRANSPORTATION CO., Inc., v. NAVIGAZIONE LIBERA TRIESTINA, S. A.*

### No. 426.

Circuit Court of Appeals, Second Circuit.

July 19, 1937.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New York City, of counsel), for appellant.

Loomis, Williams & Donahue, of New York City (Homer L. Loomis and Reginald B. Williams, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a decree in admiralty dismissing the libel by Moran Towing & Transportation Company, Inc., hereinafter called Moran, against the respondent, Navigazione Libera Triestina, S. A., hereinafter called N.L.T. Diverse citizenship exists between the two parties.

Moran is owner and operator of tugs employed to assist steamers to and from their berths in New York Harbor. N.L.T. is the owner and operator of the steamship

*Writ of certiorari denied 58 S.Ct. 145, 82 L.Ed. —.

Brenta II, and on January 21, 1926, requested Moran to send two tugs and a pilot to assist her from a pier of the Robins Dry Dock & Repair Company, Erie Basin, Brooklyn, into the stream, the Brenta to use her own propelling power. Moran sent the tugs Agnes Moran and C. P. Raymond, and the master of the Agnes Moran boarded the steamer and took charge of the maneuver as pilot. In the course of the maneuver the Brenta struck and damaged a caisson and gate forming an entrance to a graving dock of the Robins Company.

A few weeks before N.L.T. engaged Moran to perform the towing services its general agents received a letter from Moran stating the terms under which such work would be done and including· a so-called "pilotage" clause as follows:

"When the captain of any tug engaged in the service of assisting a vessel which is making use of her own propelling power goes on board said vessel or any other licensed pilot goes on board said vessel, it is understood and agreed that said tugboat captain or any other licensed pilot becomes a servant of the owner in respect to the giving of orders to any of the tugs engaged in the assisting service and in respect to the handling of said vessel and neither the tugs or their owners or agents shall be liable for any damage resulting·therefrom."

The letter was receipted for by the general agents, and the employment of Moran which is involved in the present case was under the conditions set forth in the letter.

The Robins Company brought an action in the Supreme Court, New York County, against both N.L.T. and Moran to recover damages for the injuries done to its caisson and gate. The complaint in that action alleged that the damages suffered by the Robins Company arose from the negligence of N.L.T., or of Moran, or of both of them, while engaged in the maneuver of undocking the Brenta. The action was brought against both because section 213 of the New York Civil Practice Act permits such a joinder in cases where a plaintiff is in doubt as to which of the defendants is liable. Neither defendant filed a cross-answer against the other for the purpose of determining ultimate liability between themselves as provided in section 264 of such Civil Practice Act. At the close of the trial all parties moved for judgment; findings of fact and conclusions of law were waived by the parties, and Untermyer, J., directed judgment for Robins

Company against Moran for $25,895.25 and dismissed the complaint against N.L.T. He filed an opinion, however, which was made part of the judgment roll in .the state court. That opinion is reported in Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, S. A., 154 Misc. 788, 279 N.Y. S. 257. The Appellate Division affirmed the judgment without opinion, Id., 235 App.Div. 841, 257 N.Y.S. 908. Thereupon an appeal was taken to the Court of Appeals where Judge Crouch delivered an opinion reported in Id., 261 N.Y. 455, 185 N.E. 698, likewise affirming the judgment. Thereafter Moran paid the judgment, amounting to $29,831.36, and seeks in the present suit to recover that sum, together with $8,298.66 of attorneys' fees and disbursements from N.L.T. as indemnitor under the terms of the "pilotage clause" contained in the towing contract. .The trial court, after entertaining jurisdiction in admiralty, dismissed the libel on the ground that the state court had determined that the pilot furnished by Moran was its servant and not the servant of N.L.T., that the damages to Robins Company were due to his negligence, and that the issue of liability for his acts had been determined by the state court and could not again be litigated.

The questions raised by this appeal are:

(1) Whether the admiralty court properly entertained jurisdiction of this suit by Moran against the steamship owner based upon the "pilotage clause" in the towing contract.

(2) Whether, in view of the decision of the state court that as between Robins Company and Moran the pilot was the servant of the latter and not of N.L.T., the issue of the liability of N.L.T. to Moran is res judicata, and Moran is now estopped from asserting that N.L.T. is liable under the "pilotage clause."

The question of jurisdiction of the District Court may readily be disposed of. The contract for towage service was maritime. The Supreme Court sustained the validity of a similar pilotage clause and the sufficiency of a defense interposed by a towing company under it in Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311, which was a suit in admiralty. In the present case N.L.T., by agreeing with Moran that the tugmaster should become its servant, in effect undertook to perform a maritime service and to indemnify Moran for any damage sustained by the tugmaster's

negligence. In The No. 34, 25 F.(2d) 602, 607 (C.C.A.2), a stevedore who sustained injuries had sued the contracting stevedore, his employer, and also the owner of the vessel at common law. He recovered from his employer in the state court on the ground that the latter had failed to furnish him a safe place to work. Thereupon his employer sued the owner of the vessel in admiralty and was allowed to recover upon the theory that the employer was entitled to be indemnified for injuries done to his employees through the negligence of the owner of the vessel. So far as jurisdiction in admiralty is concerned, we can see no difference between the situation in The No. 34, supra, and that in the present case. In any event, there is diverse citizenship here so that the court below would have jurisdiction for that reason if a maritime cause of action be thought not to exist. Admiral Oriental Line v. United States, 86 F.(2d) 201 (C.C.A.2). We accordingly sustain the present suit as regards the question of jurisdiction.

The question as to whether the present suit is barred by the decision of the state court in the action by the Robins Company depends on the proper analysis of just what was decided.

For present purposes we shall assume that the statements in the opinions of Untermyer, J., on the trial, and of Judge Crouch in the Court of Appeals are proper sources from which to determine what the several courts decided, though we shall hereafter discuss the correctness of this assumption.

Untermyer, J., said that the injuries to the Robins Company were due to the negligence of Healey, the master of the tug Agnes Moran, who went on board the Brenta and took charge of the undocking operations; that, while Healey was in the general employ of Moran, it was well settled that a servant in the general employ of one person might be transferred to the service of another who would then become responsible for the acts of negligence of such servant. He found, however, that, when Healey was engaged in undocking the Brenta, he was acting for Moran and remained its servant, that Moran was an independent contractor and, under the circumstances, was liable to a third party such as the Robins Company for the negligence of Healey whom it furnished as tugmaster for the Brenta—and this notwithstanding the terms of the "pilotage clause." He further said that clause was ineffective to relieve Moran from liability to N.L.T. because it contemplated that Moran should furnish a pilot having a New York state license and Healey did not have one.

Judge Crouch in his opinion in the Court of Appeals also found that Healey's negligence caused the injuries, that Moran, having agreed to undock the Brenta, acted as an independent contractor, and under the general rule was liable to the Robins Company unless relieved by the "pilotage clause." He remarked that the "pilotage clause" as such had "no validity as to third persons" and was not in and of itself conclusive on the Robins Company. He concluded by saying (261 N.Y. 455, at page 463, 185 N.E. 698, 700):

"A party may not shield himself from liability to a third person merely by stipulating with another party that he is something which in reality he is not. * * * The question became one of fact and was so determined below; nor did the court in considering the question, lose sight of the contract itself. * * * The description which the parties gave to their own relation was weighed against the facts, and the facts were found not to justify that description. We think the finding was right."

Such language could never have been used by a court which did not conclude that the contract covered Moran in its relation to N.L.T. Indeed Judge Crouch earlier in his opinion said of the "pilotage clause":

"There is plenty of authority holding that the effect of this provision as between the parties to the contract is to alter the incidence of liability and to fix it upon the ship's owner. It is analogous to an indemnity agreement or to an agreement securing exemption from liability for loss or damage caused by a party's own negligence."

It seems evident from the foregoing that the Court of Appeals never found that the "pilotage clause" required Moran to furnish a licensed Sandy Hook pilot to undock the Brenta. There is nothing in the New York statute (Consolidation Act, Laws 1882, c. 410) which requires tugmasters performing services in undocking vessels and doing work about piers to have state licenses, and Untermyer, J., was wrong in so supposing. State licenses are only required to pilot "to or from the port of New York by the way of

Sandy Hook." (Section 2098.) As Judge Crouch said in his opinion (261 N.Y. 455, at page 462, 185 N.E. 698, 700): "The maneuver which the Moran Towing Company was asked to perform was merely to undock the vessel and turn its bow seaward." Healey had the usual federal master's license for territory at and adjacent to New York Harbor and there was also a Sandy Hook pilot on board to take the vessel to sea after the undocking maneuver was completed.

As we have indicated above, Untermyer, J., made two findings: (1) That Moran could not divest itself of liability to third persons by calling Healey the servant of another and that 'it was liable to Robins Company because Healey was acting as its servant and engaged in its business; (2) that, though the "pilotage clause" be regarded as showing that Healey was not Moran's servant, it would not relieve Moran even as to N.L.T. because Healey was not a licensed pilot such as the clause called for.

If the second or alternative finding be taken as one of the grounds for the judgment in the action by Robins Company against Moran, it would be a finding as to the scope of the "pilotage clause" which would be res judicata and a bar to Moran's right to recover in the present suit, unless the state action was finally decided upon a different ground. We think the Court of Appeals proceeded to decide the appeal on a different ground and that Judge Crouch supported the trial court only on the theory that Healey, when directing the maneuver, was engaged in the business of, and was the servant of, Moran. He affirmed the decision of Untermyer, J., that the "pilotage clause" was ineffective to relieve Moran from liability to Robins Company, not because Moran failed to comply with its terms by neglecting to furnish a licensed Sandy Hook pilot, but because the clause, though complied with, was not of sufficient probative weight to offset other circumstances indicating that Healey was at all times engaged in the business of Moran and acting as its servant. In other words, the final decision in the state action in no way impugned the "pilotage clause" or questioned its validity as between the parties. If we may properly resort to the statements in the opinion of Judge Crouch, there is nothing to prevent recovery by the libelant under the "pilotage clause." Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311. The decision of the state court

in no way adjudicated the rights under that clause as between Moran and the steamship owner, since no cross-answer demanding relief against a codefendant was filed in that action. Such an application for cross-relief was, under section 264 of the New York Civil Practice Act, a necessary step to determine the question before us. The No. 34, 25 F.(2d) 602 (C.C.A.2). See, also, George A. Fuller Co. v. McCloskey, 228 U.S. 194, 33 S.Ct. 471, 57 L.Ed. 795. The contention that a cross-answer was not needed in a case where the Robins Company had joined Moran and N.L.T. as defendants under section 213 is entirely without merit.

The appellee, however, cites Russell v. Russell, 134 F. 840 (C.C.A.3), and Oglesby v. Attrill, 20 F. 570 (Wallace, J., in U. S. Circuit Court), as holding that an unconditional affirmance of a judgment by an appellate court, though rendered on entirely different grounds or only on some of the grounds upon which the decision of the lower court was rendered, leaves the questions determined by the lower court as res judicata in all respects. To treat as controlling the findings of a trial court when the appellate court upsets or disregards them and renders a decision of affirmance on different grounds furnishes parties to other litigations affected by the decision a false guide. There seems to be a paucity of authority on this question, and with all due respect we cannot subscribe to such a formal treatment of the situation. Here the Court of Appeals plainly showed by the opinion of a most accurate and distinguished judge that its decision was based, not on whether the requirements of the contract with N.L.T. had been met by Moran but, assuming its validity on the weight to be given the "pilotage clause" in connection with the other evidence, as showing whether Healey was the servant of Moran or of the steamship owner. When the judgment was affirmed, the cause had to be remitted by the Court of Appeals to the trial court under section 606 of the Civil Practice Act, and on that remittitur the Supreme Court had to enter a judgment. To say, after the opinion of Judge Crouch, that the judgment there entered was not based on his findings but was based on the statements of Untermyer, J., though there were at no time any formal findings, seems to us the height of unreason. In our opinion, we can look at such evidence as there is to discover the ground of the

decision,[1] and, on such examination, it cannot be disputed that the latest and most authoritative evidence on which the judgment on the remittitur was based shows that the state court never finally held that Moran was not entitled to indemnity under the "pilotage clause." On the other hand, if, as appellant contends, but contrary to our view, the opinions of the state courts cannot be resorted to in order to determine what was decided, Moran should likewise prevail, for, without the finding of Untermyer, J., that Moran did not fulfill the requirements of the "pilotage clause," we would have nothing before us but a judgment against the latter to pay damages for injuries caused by a maneuver against which the "pilotage clause" afforded relief.

We are satisfied that the libelant is entitled to recover the amount paid upon the judgment obtained by the Robins Company and also $8,298.66 representing disbursements and attorneys' fees, the reasonableness of which is not questioned, together with interest from the respective dates of payment.

Decree reversed, with costs and with instructions to the District Court to enter a final decree for the libelant in accordance with the views we have expressed.

---

[1] The opinion may be considered to ascertain what was decided. Oklahoma v. Texas, 256 U.S. 70, 88, 41 S.Ct. 420, 65 L.Ed. 831; Marine T. Corp. v. Switzerland G. Ins. Co., 263 N.Y. 139, 145, 188 N.E. 281; Matter of Lee, 220 N.Y. 532, 537, 538, 116 N.E. 352.