## THE H. C. JEFFERSON.

### No. 125.

District Court, E. D. Pennsylvania.

Sept. 23, 1946.

Howard M. Long and Howard T. Long, both of Philadelphia, Pa., for plaintiffs.

Rawle & Henderson and Joseph Henderson, all of Philadelphia, Pa., for defendant.

WELSH, District Judge.

This cause is before the Court on libelants' exception to the Twelfth Article contained in claimant-respondent's answer.

On January 7, 1946, the libelants were engaged in painting the S. S. Aedanus Burke which was lying on the north side of Pier 96 South Wharves, Philadelphia, Pennsylvania, in the berth nearest to the river end of the Pier. The float or stage used in connection with this painting operation was moored to the said S. S. Aedanus Burke. On the aforementioned date, an undocking operation was in progress in which the S. S. William L. McLean, owned by the United States War Shipping Administration, was being assisted by Tugs H. C. Jefferson and Curtis Bay, operated by Curtis Bay Towing Company, and owned by claimant-respondent, Donaldson Towing and Lighterage Company. While the S. S. William L. McLean was being towed by Tugs H. C. Jefferson and Curtis Bay from a berth next to the S. S. Aedanus Burke on the north side of Pier 96 South Wharves, Philadelphia, she was brought into collision with the paint float by the Tug H. C. Jefferson, thereby causing damage to libelants' float or stage and loss of the equipment laden thereon.

The undocking operation described above was performed under the terms of a towing contract between the United States of America, War Shipping Administration, and Curtis Bay Towing Company of which paragraph 8 provides: "Whenever the

master or other officer of any tug or any licensed pilot goes on board a vessel to assist her movement or handling, he becomes and continues to be solely the servant of said vessel and her owners in respect of all acts done by him and all orders given by him to any tugs engaged or to said vessel or otherwise in the movement or handling of said vessel; and none of the tugs or their owners, agents or charterers shall be responsible or liable for any claims or any damages caused by or resulting from such acts or orders."

In the Twelfth Article of the answer the claimant-respondent avers the existence of the above-quoted towage contract between Curtis Bay Towing Company of Pennsylvania, charterer of Tug H. C. Jefferson, and United States of America, War Shipping Administration and alleges that under the terms of said contract the H. C. Jefferson, her owners and operators, are not legally responsible for any negligent act or omission of the master of the Tug H. C. Jefferson while on board the S. S. William L. McLean directing the movement of that steamer. The libelants execpt to the Twelfth Article of claimant-respondent's answer and argue that claimant-respondent is attempting to set up in said Article an incompetent, immaterial and irrelevant defense to the allegations of the libel and argue further that neither of the libelants nor any of them are parties to said towage contract, and therefore, cannot legally be affected by same.

■ The validity of paragraph 8 of the towage contract mentioned above can hardly be disputed for a "pilotage clause" such as is involved in the instant case was upheld by the Supreme Court of the United States in Sun Oil Co. v. Dalzell Towing Co., Inc., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311. In that case, the Court, after holding that a towage company in performing a contract to assist a vessel propelled by her own power and manned by her officers and crew is neither common carrier nor bailee and therefore not subject to the rule that prevents common carriers and others under like duty to serve the public from escaping by agreement liability for damage caused by their negligence, held it may validly be stipulated that the tug captains, when they board the vessel, shall become the servants of her owners, so that for damage resulting from their orders in piloting the vessel the owners of the tugs shall not be liable.

■ It is a well-established doctrine that a servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. Restatement on Agency, Sec. 227. Whether or not the servant of a general employer becomes the special servant of another is a question of fact and should be reserved for determination upon the trial of the cause. In the Twelfth Article of its answer the claimant-respondent interposes the defense of non-employment of a person whose purported act gave rise to the present claim. In other words, the claimant-respondent denies that the master of the H. C. Jefferson was in its employ and charges that he was in the employ of the United States of America, War Shipping Administration. It is clear that the defense raised creates the issue of "loaned servant" and that issue we deem factual and should be determined at the trial. We need cite only one case in support of the conclusion we have reached—the case of Moran Towing & Transportation Co. v. Navagazione Libera Triestina, S. A., 2 Cir., 92 F.2d 37. There it was held that a "pilotage clause" (such as in paragraph 8 of the towing contract in the instant case) did not relieve the tug company because, though complied with, the clause did not set off other circumstances showing that pilot was tug's servant, and that the tug company was entitled to be indemnified by the owner of the vessel under the terms of the towing contract and more particularly under the terms of the "pilotage clause". Even a cursory reading of the latter opinion makes it plain that the Court concluded that the judge in the state action decided that the towing company was liable to the pier company only after considering at length the factual issue of whether or not the servant of the tug company became the servant of the owner of the vessel.

We find that the averment contained in the Twelfth Article of claimant-respondent's answer is material as it raises an issue of fact and the libelants' exception thereto is accordingly dismissed.