### THE ROSLYN.

### CLEARY BROS., Inc., v. CITY OF NEW YORK.

### No. 69.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

Foley & Martin, of New York City (James A. Martin and Christopher E. Heckman, both of New York City, of counsel), for appellant.

Paul Windels, of New York City (P. Fearson Shortridge, of New York City, of counsel), for appellee City of New York.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New York City, of counsel), for appellee Moran Towing & Transportation Co., Inc.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The City of New York chartered the libelant's scows, among them the Roslyn, to carry ashes and rubbish from waterfront dumps in Manhattan and The Bronx to Rikers Island. The charter was effective May 1, 1932, and ran from day to day continuously until terminated by either party upon one day's written notice. It was in the form of a letter written by the city (Department of Sanitation) to the libelant, and assented to by the libelant, whereby libelant furnished and paid a scowman for each scow and was paid an agreed sum per day while the scows were in use. The limits of liability of the city were defined in the charter in some detail, paragraph numbered (12) providing that: "The City of New York will be responsible for damages to your scows caused by the negligence of its servants and employees. The City of New York will not be responsible for damages to your scows of any nature whatsoever from any other cause whatsoever".

The libel alleged the charter and delivery in good condition of the Roslyn to the City of New York and its return in damaged condition "due to respondent's breach of its obligations under the said charter."

The city answered, denying liability, and impleaded the respondent Moran Towing & Transportation Company, Inc., who also answered with a denial of liability. The cause was heard upon the pleadings and evidence with no attack upon the sufficiency of the libel until all the evidence had been submitted, when dismissal was urged on the ground that no negligence had been alleged. The motion was not granted, but upon consideration the libel was dismissed on the merits.

In denying the motion to dismiss on the pleadings, there was no reversible error in view of the liberality with which pleadings are treated in the admiralty. No one had been surprised, and a full trial on the merits had taken place when the question was first raised. Under such circumstances, the motion to dismiss came too late, and the complaint was properly taken as amended to conform to the proof. Pioneer S. S. Co. v. McCann (C.C.A.) 170 F. 873, 880. See, also, The G. L. 40 (C.C.A.) 66 F.2d 764, 766.

There was little dispute as to the facts. The city used the Roslyn on June 1, 1935, to carry refuse to a fill it was making at Orchard Beach in tow of a tug of the impleaded respondent Moran Towing & Transportation Company. Upon arrival at Orchard Beach the scow could not at once be taken to be unloaded inside a barrier the city maintained to prevent harbor pollution, and so she was moored at a stakeboat nearby. This stakeboat was a dumper owned by the city which it had had Moran moor there for that purpose a few days before so as to do away with the need of tugs remaining with their scows until the tide was at proper stage to open the barrier to let smaller tugs take the scows inside to be unloaded. The Roslyn was one of eight loaded scows in the tug's flotilla which was in two tiers of three scows each and a third tier of two and was so moored at the stakeboat. The Roslyn was the port boat in the second tier. She was tied up about a quarter past one in the afternoon. High water was at 12:30 p. m. that day. At about 3 o'clock that afternoon the scowman on the Roslyn found a plank buckled up from the bottom. A survey the next day disclosed that fourteen bottom planks and two keelsons were broken. None of the damage was within nine feet of either side of the scow. What or where she struck to cause it was not shown.

It did appear that, when the stakeboat was placed where it was by the Moran Company for the city, the tug that towed it there took soundings at about half tide every few feet while going around a circle roughly 1,200 feet in diameter. The stakeboat was moored at about the center of the circle. The soundings taken ranged from 14 to 18 feet. The rise and fall of the tide was from 6 to 7 feet. This would show a corrected depth of not less than 10 feet. Moreover, the waters were charted and the chart showed a minimum depth for the area of 10 feet. The Roslyn had sides 10 feet high and was drawing about 9 feet that day as loaded.

Though care was taken in the charter to limit the city's liability for any damage to the scow to the negligence of its servants and employees, that really is of little consequence, except as noticed below, since under the law applicable to the facts proved this would be its liability anyway. Alpine Forwarding Co. v. Pennsylvania R. Co. (C.C.A.) 60 F. 2d 734. And negligence, if any, must be the sole basis of recovery against the impleaded respondent. It is suggested that under the charter the scow could be used only to carry refuse to Rikers Island and so the trip to Orchard Beach was what is called a deviation. But this claim is futile in view of the charter making negligence the test of the city's liability in any event.

The duty owed the libelant was to use reasonable diligence to ascertain conditions at the stakeboat to the end that the scow would have a safe berth. This duty was that of a wharfinger who is not an insurer but is chargeable only upon failure to use due care which results in damage. Smith v. Burnett, 173 U.S. 430, 19 S.Ct. 442, 43 L.Ed. 756; Harms Co. v. Upper Hudson Stone Co., 234 F. 859 (C.C.A.2); the Junior, 279 F. 407 (C.C.A.2). We agree with the trial court that reasonable precautions were taken to provide a safe berth for the Roslyn and that, consequently, no negligence was proved on the part of either respondent.

Some confusion seems to have arisen in the one instance because of the libelant's reliance upon a presumption of negligence often said to be created by proof of delivery in good condition and return damaged as was this scow and in another because of the special limitation in the charter to confine the city's responsibility to damage caused by negligence. All of this is but a varia-

tion of the difficulty which sometimes is due to the failure to note the difference between a good libel in a case like this and a good prima facie case in support of the libel. Always recovery follows only upon proof of negligence or the equivalent of such proof as was said in Cummings v. Penn R. Co. (C. C.A.) 45 F.2d 152, and again pointed out in Alpine Forwarding Co. v. Pennsylvania R. Co., supra. If the libelant proves simply the charter, delivery in good condition, and return damaged, and there is no other evidence introduced, the presumption of negligence flowing therefrom is the equivalent of proof of negligence which will entitle the libelant to a decree. But the burden of proof which is on the libelant does not change, and, if evidence is introduced to show what happened, that evidence from whatever source it comes controls the issue. If it shows no negligence or, more strictly, fails to show negligence, there can be no recovery for the presumption disappears when the facts appear. See Alpine Forwarding Co. v. Pennsylvania R. Co., supra, and Pariso v. Towse (C.C.A.) 45 F.2d 962. And so here the libelant may have made out a good prima facie case because of the presumption of negligence, but that will not support a decree, since the evidence did not stop there, and upon consideration of the entire evidence no negligence could justly have been found.

Affirmed.