## FYFE et al. v. PAN–ATLANTIC S. S. CORPORATION.

### No. 390.

Circuit Court of Appeals, Second Circuit.

July 15, 1940.

Rehearing Denied Aug. 26, 1940.

Writ of Certiorari Denied Dec. 9, 1940.

See 61 S.Ct. 319, 85 L.Ed. ——.

Henry N. Longley, Bigham, Englar, Jones & Houston, John W. R. Zisgen, and Haight, Griffin, Deming & Gardner, all of New York City, for libelants-appellees.

Russell C. Gay, Barber, Matters & Gay, and Burlingham, Veeder, Clark & Hupper, all of New York City, for respondent-appellant.

Before CHASE, CLARK, and PATTERSON, Circuit Judges.

On rehearing: before CHASE and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal involves an injury by fire in New York harbor to 500 bales of Manila fibre and 67 coils of Manila rope delivered to the Barber-Wilhelmsen Line at Philippine ports, for shipment, via New York and New Orleans, Louisiana, with on-carriage by rail, to Peoria, Illinois, and St. Louis, Missouri, respectively. Libelants became the owners of the goods before their arrival in New York. The through bills of lading issued by the Barber-Wilhelmsen Line called for carriage of the goods by that line to New Orleans. Barber-Wilhelmsen operated between Manila and New York, but made no calls at Gulf ports. It was within the contemplation of all parties that Barber-Wilhelmsen would arrange at New York for transshipment by water to New Orleans.

Respondent, Pan-Atlantic Steamship Corporation, maintained a freight service between New York and New Orleans. Pan-Atlantic had a standing arrangement with Barber-Wilhelmsen, pursuant to which cargoes brought by Barber-Wilhelmsen to New York were to be on-carried by Pan-Atlantic from New York to Gulf ports. The freight charge indicated on the through ocean bill of lading was to be divided in the ratio of 60 to 40 per cent between the two lines, 60 per cent going to Barber-Wilhelmsen. The cost of transferring the cargo from one ship to the other at New York was to be shared on the same 60-40 basis.

Transshipment of libelants' fibre and rope at New York commenced in accordance with this underlying agreement. Barber-Wilhelmsen notified Pan-Atlantic of the arrival of the cargo, and requested that the latter arrange for the services of a lighter. Pan-Atlantic instructed the Manhattan Lighterage Corporation to receive the goods at the Barber-Wilhelmsen dock and remove them to the Pan-Atlantic pier. Manhattan dispatched its lighter "Sydney" to perform the task. After the "Sydney" had received the fibre and rope and had arrived at the Pan-Atlantic pier, a fire broke out on the "Sydney" due to the negligence of her crew, and the merchandise was damaged. The Pan-Atlantic vessel which was to carry the cargo to New Orleans had not yet tied up at the pier.

Libelants brought suit against Barber-Wilhelmsen, Pan-Atlantic, and Manhattan and its lighter "Sydney." Barber-Wilhelmsen's motion to dismiss the libel as to it was sustained. Thereafter Manhattan and the "Sydney" were discharged under the Fire Statute, 46 U.S.C.A. § 182, discussed below. The action proceeded against Pan-Atlantic alone, and resulted in an interlocutory decree in favor of libelants, with an order of reference for the ascertainment of the amount of the damages.

1. The district court found that Manhattan was respondent's agent to lighter the goods from one vessel to another in New York harbor. In a thoughtful opinion the court expressed the view that the lighter "Sydney" was the agent of Barber-Wilhelmsen and Pan-Atlantic as joint principals. Whether lighters carrying cargo to a main carrier are acting on behalf of the main carrier, so that he receives the goods when they do, is a question of fact. Robinson on Admiralty, 492. Pan-Atlantic had a general contract with Manhattan for lightering its shipments. Manhattan was not an independent carrier. It did not agree to on-carry a cargo

in return for a percentage of the through freight charge. The through freight charge was shared by Barber-Wilhelmsen and Pan-Atlantic, and together they bore the expense of hiring Manhattan to ferry the cargo from one ship to another. While Barber-Wilhelmsen and Pan-Atlantic were independent carriers in relation to each other, and neither was responsible for damage occurring while the cargo was in the other's sole charge, they were engaged in a joint enterprise in so far as the lighterage in New York was concerned.

■ The finding of the district court that Manhattan was respondent's agent for the transshipment of the goods at New York is therefore amply supported by the facts. It matters little whether the lighterage be conceived of as the initial act in on-carriage from New York to New Orleans (Bulkley v. Naumkeag Steam Cotton Co., 24 How. 386, 65 U.S. 386, 16 L.Ed. 599) or whether the lighterage be deemed an intermediate event in a through carriage from the Philippines to New Orleans (Colton v. New York & Cuba Mail S. S. Co., 2 Cir., 27 F.2d 671). In either case the lighter is but a substitute for the ship, and the carrier is responsible for damage suffered through the act of its agent during the transshipment.

2. This finding of agency, so far as it indicates a liability, not only of Manhattan, but also of Barber-Wilhelmsen, is not in harmony with the theory upon which the latter concern succeeded in obtaining a dismissal of the libel as to it. The order of dismissal, signed by another district judge, was accompanied by an opinion stating that Manhattan was a connecting carrier (for whose negligence the initial carrier was not responsible), rather than an agent of the two main carriers. That ruling was made on the basis of the libel alone, wherein it was alleged that the goods were delivered in good condition into Manhattan's possession and while there were injured through Manhattan's negligence. It thus appears to have been a proper construction of the situation as revealed by the pleading then before the court. But the facts adduced at the trial showed a different situation from that indicated by the libel, and substantiated the finding of agency made below.

■ Respondent has urged that this finding of agency was improper under principles of res judicata and the law of the case. It is mistaken in that contention, however. A ruling that a complaint or libel fails to state a cause of action does not preclude the filing of an amended complaint or libel, in which are included such additional facts as would make the cause of action valid. True, under modern principles, failure to amend upon dismissal of a complaint under circumstances where amendment was permissible should bar the institution of a second suit. See Northern Pacific Ry. Co. v. Slaght, 205 U.S. 122, 27 S.Ct. 442, 51 L.Ed. 738; Clark, Code Pleading, 367, and cases cited; von Moschzisker, Res Judicata, 38 Yale L.J. 299, 318-320; 9 Yale L.J. 387. Even this has not always been the rule, and plaintiffs, despite the entry of final judgment against them, have in the past been permitted to file new complaints in which the original defect has been remedied. Cf. Gould v. Evansville & C. R. R., 91 U.S. 526, 23 L.Ed. 416; Clark, loc. cit. supra.

■ Here libelants without doubt could have obtained permission to amend their libel after exceptions to it had been sustained. Admiralty Rule 23, 28 U.S.C.A. following section 723; Hughes v. Roosevelt, 2 Cir., 107 F.2d 901. They did not seek to amend as to Barber-Wilhelmsen, and allowed final judgment to go against them in favor of that respondent. They did, however, proceed to trial against the present respondent; at the trial the missing facts were proved, and a cause of action was made out. In this state of the record, an amendment of the pleadings to conform to the proof was, of course, permissible. The Roslyn, 2 Cir., 93 F.2d 278; cf. Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. So far as concerns Pan-Atlantic, libelants may therefore be deemed to have amended their libel and to have stated a sufficient cause of action in their libel as amended. It is regrettable if one of two joint principals may have succeeded in permanently escaping a share of a liability while the other is justly ensnared, but such are the fortunes of law.

It should be noted further that respondent's relationship with Manhattan was not in issue on the hearing which concerned Barber-Wilhelmsen's relations with Manhattan, and that somewhat different facts apply. Thus, it was respondent that actually hired Manhattan for the task of reshipment. Hence the ruling exonerating Barber-Wilhelmsen should not be res judicata in any event in favor of re-

spondent. George A. Fuller Co. v. Otis Elevator Co., 245 U.S. 489, 491, 38 S.Ct. 180, 62 L.Ed. 422; The No. 34, 2 Cir., 25 F.2d 602; Moran Towing & Transportation Co., Inc. v. Navigazione Libera Triestina, S.A., 2 Cir., 92 F.2d 37. And hence cases cited by respondent as to the effect of a judgment in favor of the principal upon a claim against the surety, or of negligence of one party to an automobile accident upon later suits by that same party, are not in point. Kramer v. Morgan, 2 Cir., 85 F.2d 96; Good Health Dairy Products Corp. v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401.

■ 3. The bill of lading, however, by its terms expressly exempted the main carriers from liability for damage to the cargo while on lighters, and stated that each main carrier "shall be responsible only for the goods whilst same are in their own personal custody." We agree with the construction placed by the district court upon these clauses, and with its conclusion that so construed the attempt to limit liability was unlawful. The shipper had been issued a through bill of lading, and after doing this the main carriers could not contract against their liability during transshipment. Colton v. New York & Cuba Mail S. S. Co., supra; Harter Act, § 1, 46 U.S.C.A. § 190, making unlawful provisions of a bill of lading relieving a shipowner from liability for loss arising from negligence in loading or stowage of merchandise committed to his care. The damage during lighterage in the Colton case was held to be due to the negligence of the main carrier itself; but the main carrier would be equally liable if the negligence was that of the lighter and the lighter was its agent. See also the opinion of Judge Patterson in Morris v. Lamport & Holt, Ltd., D.C.S.D.N.Y., 54 F.2d 925, affirmed without opinion in 2 Cir., 57 F.2d 1081.

■ 4. The Manhattan Lighterage Corporation, the party primarily at fault, has been exonerated from liability pursuant to the Fire Statute, 46 U.S.C.A. § 182, which states that "No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect

of such owner." Respondent makes the plausible argument that, since Manhattan, its agent, cannot be held responsible because of the Fire Statute, Pan-Atlantic, as principal, must also be exonerated on settled principles of agency law. It is quite true that a principal may not be liable if his agent is free from fault, but there are many instances where the agent has committed an unlawful act and yet is immune from responsibility. In the latter class of cases the principal has not often been permitted to escape. See Chief Judge Cardozo's historic opinion in Schubert v. August Schubert Wagon Co., 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293. In that decision a wife run down by a truck driven by her husband was permitted to recover from her husband's employer, although the husband himself was, under New York law, immune from suit. The statutory immunity from responsibility for fire granted to the owner of a vessel except for his own neglect or default does not alter the fact that a fire caused by the negligence of the owner's employees is an unlawful act, albeit one for which the owner cannot be held liable. The immunity of the owner does not extend to his principal, for that immunity is "not inconsistent with the commission of a wrong unreleased and unrequited." 249 N.Y. 253, at page 256, 164 N.E. 42, 64 A.L.R. 293. Cf. also George A. Fuller Co. v. Otis Elevator Co., supra. The owner as agent committed a legal wrong when his employees negligently allowed the fire; and under the theory of the Schubert case, that wrong may yet be laid at the principal's door. We are fortified in our conclusion by a similar ruling made under the English Fire Statute. Morewood v. Pollok, 18 Eng.L. & Eq.R. 341, 118 Eng.Rep. 614. Cf. also Constable v. National S. S. Co., 154 U.S. 51, 62, 14 S.Ct. 1062, 38 L.Ed. 903; The City of Clarksville, D.C. Ind., 94 F. 201, 204.

■ 5. Respondent also relies on an express provision in the bill of lading, whereby the main carriers exempted themselves from liability for damage caused by fire, in lighters or other craft, due to the negligence of the lighter's crew. If this provision is valid, Pan-Atlantic is, of course, relieved from responsibility. But we do not believe that such a contractual limitation of liability may stand in the face of § 1 of the Harter Act, 46 U.S.C.A. § 190, referred to above and making in-

valid provisions relieving a shipowner from liability for loss or damage arising from negligence in proper loading of merchandise and before the vessel is at sea. The Harter Act in no wise weakens the immunity granted under the Fire Statute. Earle & Stoddart, Inc., v. Ellerman's Wilson Line, Ltd., 287 U.S. 420, 53 S.Ct. 200, 77 L.Ed. 403.[1] We have already concluded that the Fire Statute does not protect a main carrier from liability for fire on a lighter, caused by the negligence of the lighter's employees. Negligence of the lighter's employees which results in fire is no different, so far as the main carrier is concerned, from negligence of the lighter's employees resulting in any other disaster. As held by Judge Patterson in Morris v. Lamport & Holt, Ltd., supra [54 F.2d 926], citing cases, the main carrier may not stipulate away liability for loss due to the negligence of the lighter's employees if, as we have concluded here, the lighterage is a job "undertaken by the carrier." In so far as The Munaires, D. C.E.D.La., 12 F.Supp. 913, may be interpreted to express views otherwise, we cannot agree. Scrutton, in his book on Charterparties and Bills of Lading (14th Ed. 1939) 279, note r, appears to sanction the use of such provisions, but the English law does not oppose immunity by contract from liability for negligence. Our own policy is to refuse recognition of such contracts unless explicitly authorized by statute. Compania de Navigacion La Flecha v. Brauer, 168 U.S. 104, 117, 18 S.Ct. 12, 42 L.Ed. 398.

■ 6. Respondent urges that the negligence of the lighter "Sydney's" crew has been assumed throughout the trial, but never actually proven. It is true that there is no evidence of negligence in the record. But libelants alleged such negligence, and respondent not only admitted the truth of this allegation in its answer, but also set up the negligence of the "Sydney" as an affirmative defense. Libelants were not bound to prove facts expressly admitted in the pleadings. While respondent's answer was filed before Manhattan succeeded in extricating itself from this litigation, that circumstance does not weaken the force of respondent's admission, especially since it never requested permission to amend its pleadings.

Affirmed.

## On Petition for Rehearing.

PER CURIAM.

The main reliance of the petition for rehearing is upon a case not previously cited to us, Galveston Wharf Co. v. Galveston, H. & S. A. R. R., 285 U.S. 127, 52 S.Ct. 342, 344, 76 L.Ed. 659. But we fail to see how that controls here. There the Supreme Court affirmed the highest court of Texas in granting recovery to a shipper against a Wharf Company; it exonerated no one. It expressly accepted the facts found by the lower courts (as we have done); those included a finding of delivery to the Wharf Company. "The wharf company did not dispute that it was a common carrier. As such, it had facilities and rendered service. It is also manifest that it received the goods for transportation to the connection with the railway company that was to take them to destination." There is a reference to the fact that the Wharf Company owned not only the pier where the goods were when destroyed by fire, but also railroad trackage from its piers to connections with railroads running out of Galveston, including a Southern Pacific line which was named in the bill of lading as the delivering carrier. In other words, the actual circumstances were such as to call for railroad transportation by the Wharf Company, and the Supreme Court's affirmance of the holding that the "wharf company was thus in fact and in law a connecting carrier" seems apposite to the circumstances there existing—and not to those found by the district court herein.

That we have correctly interpreted the Supreme Court's view of the case seems clear from its statements in the same opinion distinguishing Missouri P. R. R. v. Reynolds-Davis Grocery Co., 268 U.S. 366, 45 S.Ct. 516, 69 L.Ed. 1000, urged upon it as showing that the Wharf Company was only the agent of the main carrier. The Court said that in the cited case the Missouri Pacific "had employed the St. Louis-San Francisco to perform a switching service in making the required delivery at the place of destination," and that there the Missouri Pacific was held to be the delivering carrier and "could not defeat that liability by the employment of an agent for service at the terminal." The finding which we have accepted and which we consider amply justified on the evidence makes the earlier precedent the governing one here. As we said

[1] The same result appears to follow from the Carriage of Goods by Sea Act of 1936, applicable only to such carriage in foreign trade. 46 U.S.C.A. §§ 1303(8), 1307, 1311, 1312; Robinson on Admiralty, 517.

in the main opinion, whether lighters carrying cargo to a main carrier are acting on behalf of the main carrier, so that he receives the goods when they do, is always a question of fact. We believe that question has been resolved correctly.

Except for certain objections of form, other grounds relied upon in the petition were discussed in the former opinion, to all of which we adhere except the third paragraph of Section 2, which will read as follows:

Here libelants without doubt could have obtained permission to amend their libel after exceptions to it had been sustained. Admiralty Rule 23, 28 U.S.C.A. following section 723; Hughes v. Roosevelt, 2 Cir., 107 F.2d 901. They did not seek to amend as to Barber-Wilhelmsen, and allowed final judgment to go against them in favor of that respondent. They did, however, proceed to trial against the present respondent; at the trial the missing facts were proved, and a cause of action was made out. In this state of the record, an amendment of the pleadings to conform to the proof was, of course, permissible. The Roslyn, 2 Cir., 93 F.2d 278; cf. Rule 15 (b), F.R.C.P., 28 U.S.C.A. following section 723c. So far as concerns Pan-Atlantic, libelants may therefore be deemed to have amended their libel and to have stated a sufficient cause of action in their libel as amended. It is regrettable if one of two joint principals may have succeeded in escaping a share of a liability while the other is justly ensnared, but such are the fortunes of law.

Petition for rehearing denied.