O'BOYLE, Inc. v. CITY OF NEW YORK.

The CHARLES H. BAXTER.

No. 18161.

United States District Court
E. D. New York.
March 29, 1949.

Macklin, Brown, Lenahan & Speer, New York City, for respondent.

John P. McGrath, Corporation Counsel, New York City, for City of New York.

RAYFIEL, District Judge.

The libelant herein seeks recovery from the respondent for damages sustained by its barge, the Charles H. Baxter, by reason of respondent's negligence.

Some time prior to May 2, 1946, the libelant's barge arrived at the dock at the City Power House at 74th Street, East River, New York, carrying about 300 tons of coal consigned to the City of New York.

On May 2, 1946, the Charles H. Baxter was tied up outside of the barge Fisher Island, owned by M. & J. Tracy, which had been tied up to the dock by dock men employed by the City of New York, the respondent herein.

The Fisher Island was tied to the dock by four lines, two being 7-inch breast lines and the remaining two being 4-inch spring lines, one running from each end of the barge. The Charles H. Baxter had no lines running to the dock and was tied to the Fisher Island by two 5-inch lines, one running to the bow and the other to the stern.

At about 9:00 P. M. on May 2, 1946, the dock men, employees of the respondent, sought to shift the said barges, by hand, upstream along the dock so that they would come under the unloading digger. This shifting operation was performed with the flood tide by paying out breast lines. (see paragraph "seventh" of answer).

The answer states that the breast line from the Charles H. Baxter to the dock snapped, causing undue strain on the other lines, which also broke, but the respondent offered no evidence to support that allegation. The libelant's witnesses testified—and they were not controverted—that there were no lines running from the Charles H. Baxter. Hence, if the lines broke, as stated in the answer, they must have been the lines running from the Fisher Island to the dock, and those lines had been tied to the dock by the respondent's employees.

When the lines snapped both barges drifted upstream under the Triboro Bridge on the Long Island side, where they struck against the bottom. They came off the bottom with the tide, and kept drifting up river until they reached a point near the Astoria gas works where a police boat and a fire boat picked them up and put them alongside the Astoria Gas Works dock.

The libelant states that the respondent was negligent in attempting to shift the barges upstream by hand at that point on the river at flood tide, and at a time when the current was flowing at the rate of 4.6 knots per hour, as indicated by the record herein. In support of its contention it offered the testimony of Robert Wilson, who had performed shifting operations in the vicinity of the City Power House dock, and who stated that it would be unsafe to shift

two barges by hand in a flood current of approximately four knots an hour.

The respondent adduced no testimony in its defense, resting on the libelant's case, and moved to dismiss the libel on the ground that the libelant failed to make out a prima facie case. The respondent contends that it was not negligent, and that the barges were cast adrift because the lines holding libelant's barge to the dock, and which were furnished by the libelant, were defective.

I am satisfied that there were no lines tying the Charles H. Baxter to the dock and that the lines tying the latter to the Fisher Island were not defective. As a matter of fact they were still tied to the Fisher Island while the barges were drifting upstream.

I am satisfied further that the shifting operation was conducted by the respondent's employees, who had sole control and supervision thereof, under unsafe conditions of tide and current, and that the lines holding the Fisher Island to the dock broke or parted due to the negligence of the respondent's dockmen.

Counsel for the respondent, in his opening statement, admitted that the shifting operation was performed by the respondent's employees, (S.M. p. 3) and further conceded that there was some damage (S.M. p. 9). As hereinbefore mentioned, paragraph "seventh" of the answer, states, that the said operation was conducted by respondent's employees at flood tide and by hand. It was not necessary, therefore, to prove those facts. See Fyfe et al. v. Pan-Atlantic Steamship Corp., 2 Cir., 114 F.2d 72; Christopher Oscanyan v. Winchester Repeating Arms Company, 103 U.S. 261, 26 L.Ed. 539, cited in Cutcliffe v. Commissioner of Internal Revenue, 5 Cir., 163 F.2d 891.

There was no proof that the lines leading from the Fisher Island to the dock were defective. If, however, they were, it was the duty of the dockmen to inspect them before undertaking the shifting operation. If they were not defective then it is apparent that the shifting was done under tide and current conditions which imposed too great a strain on them.

As consignee and wharfinger the respondent was under an obligation to exercise due and reasonable care in discharging the cargo of coal. In my opinion it failed to do so. I do not think there was any fault on the part of the libellant. I think the sole cause of the damage to the Charles H. Baxter was the negligence of the respondent.

Judgment is therefore given for the libelant, with costs. The case will be sent to a Commissioner to assess damages.

Submit decree in conformity herewith.

This action having duly come on for trial before this Court, and due deliberation having been had thereon, the Court makes the following:

## Findings of Fact

(1) At all the times mentioned in the libel herein the libelant was and still is a corporation, organized and existing under and by virtue of the laws of the State of New York.

(2) At all the times mentioned in the libel the respondent was and still is a municipal corporation, organized and existing under and by virtue of the laws of the State of New York.

(3) At all the times mentioned in the libel the libelant was and still is the owner of the barge Charles H. Baxter.

(4) At all the times mentioned in the libel the respondent owned and operated the power house and dock located at the foot of 74th Street and East River in the Borough of Manhattan, City of New York.

(5) On or about the 2nd day of May, 1946, the respondent was the consignee of a cargo of coal lying aboard the barge Charles H. Baxter, which was moored alongside the barge Fisher Island at the aforementioned dock.

(6) The Charles H. Baxter was tied to the Fisher Island by two 5-inch lines, one fore and one aft, and there were no lines tying the Charles H. Baxter to the dock.

(7) The Fisher Island was moored to the said dock with two 7-inch breast lines and two 4-inch spring lines.

(8) At about 9 P. M., May 2, 1946, while the captain of the Charles H. Baxter was

asleep and in his cabin, and the captain of the Fisher Island was not aboard his barge, employees of the respondent attempted to shift both barges upstream by paying out the breast lines leading from the Fisher Island to the dock so that they might bring the barges in to a position under an unloading digger.

(9) At about 9 P. M. on May 2, 1946, the tide was at flood stage, and the current was running at 4.6 knots, or approximately 460 feet per minute.

(10) It was unsafe and improper to shift a barge by hand at flood tide.

(11) It was unsafe and improper to shift two barges in a current running at the rate of 4.6 knots or about 460 feet per minute.

(12) Prior to May 2, 1946, the Charles H. Baxter was shifted alongside and outside of the Fisher Island by the respondent's employees, who always took charge and control of boats consigned to the aforementioned dock for unloading and discharging operations.

(13) Prior to the aforementioned shifting operation the lines of the Charles H. Baxter were in good condition.

(14) At about 9 P.M. on May 2, 1946, the captain of the Charles H. Baxter was awakened by two employees of the respondent, who told him that his barge was adrift.

(15) At that time the Charles H. Baxter was still tied to the Fisher Island in the same manner as it had been tied at the dock, and none of the said lines was broken.

(16) At the time when respondent's employees informed the captain of the Charles H. Baxter that his barge was adrift, a broken line was hanging over the stern of the Fisher Island.

(17) Shortly thereafter, and when the barges reached a point under the Triboro bridge, the Charles H. Baxter struck bottom and sustained damage.

(18) Several hours subsequent to the grounding the captain of the Fisher Island examined his lines and found that one line was broken and two lines were missing.

(19) The respondent was negligent in shifting the Charles H. Baxter and the Fisher Island on May, 2, 1946 at flood tide and in the face of a current running 4.6 knots or about 460 feet per minute, which were the tide and current conditions prevailing at the time of the shifting operation.

(20) None of the libelant's lines was used or broken in the shifting operation.

## Conclusions of Law

(1) The respondent, undertaking the operation of shifting the barges, thereby assumed the responsibility therefor.

(2) The respondent, the City of New York, was in the relationship of consignee-wharfinger to the libelant's barge, the Charles H. Baxter.

(3) The respondent was negligent in that it failed to exercise reasonable care when it shifted the barges by hand at flood tide and in a current running 4.6 knots or about 460 feet per minute.

(4) The libelant's barge Charles H. Baxter was endangered by the negligent manner in which the shifting operation was conducted.

(5) The Respondent's negligence was the proximate cause of the damage sustained by the Charles H. Baxter.

(6) The respondent is liable to the libelant for the damage sustained by the Charles H. Baxter.

(7) The libelant was wholly without fault.

(8) The libelant is entitled to an interlocutory decree.