**VAL MARINE CORPORATION,**
Petitioner-Appellant,

v.

**Leonard COSTAS, Claimant-Appellee.**

**No. 262, Docket 24871.**

United States Court of Appeals
Second Circuit.

Argued March 24, 1958.

Decided June 17, 1958.

Robert S. Blanc, Jr., of Hill, Betts & Nash, New York City (Edwin Longcope and David C. Wood, New York City, on the brief), for petitioner-appellant.

Alfred J. Skidmore, New York City (James B. Magnor and Charles N. Fiddler, of Kirlin, Campbell & Keating, New York City, on the brief), for claimant-appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and DIMOCK, District Judge.

CLARK, Chief Judge.

This proceeding started as one for exoneration or limitation of liability for a collision between petitioner's Tug Val No. 1 and claimant Leonard Costas' motor boat in the East River, New York City, on September 2, 1953. Since the tug proved to be worth more than all claims, and no damages were sought for it, the action eventually became one for the adjustment of Costas' claims for personal injury and property damages and the claims for personal injuries of the three guests aboard his motor boat. An issue developed as to responsibility for the collision, petitioner and claimant each charging the other categorically with negligence and in turn denying all fault. This issue was tried at length before Judge Dawson, who eventually found that both were at fault and ordered the damages equally divided. D. C.S.D.N.Y., 145 F.Supp. 551. The damages for the four occupants of the motor boat were then fixed, and the action terminated in a final decree ordering a division of these damages and their payment in the first instance by petitioner (except for a small setoff against Costas), but ultimately denying all right of contribution to petitioner. This anomalous result effectually rendered abortive all the petitioner's hard won, if partial, victory; it also nullified the judge's own reasoned decision dividing the damages. It is justified by the judge on the ground that petitioner had made no claim against Costas. Claimant supports this ruling with the additional assertion of delay that "during the three and one-half years the proceeding was pending in the district court no cross-claim, cross-libel or other pleading asking for such affirmative recovery was filed or requested to be filed by the petitioner." Since the issue on appeal is this denial of all right of contribution we must examine these contentions.

We may conveniently start with a chronological statement of events. The petition was filed on March 1, 1954, and pleadings and claims were completed that

spring. A note of issue for trial was filed February 10, 1955, and Notices of Readiness for Trial were filed on August 24 and 31, 1955. After pre-trial on June 4, 1956, trial was had on June 6, 7, and 22, 1956, before Judge Dawson, who filed his opinion for the equal division of damages on October 25, 1956. This opinion directed the submission of decrees on five days' notice; the parties complied, and the court entered an interlocutory decree with reference to a commissioner on December 17, 1956. The commissioner having died, trial of one of the claims was had before Judge Dawson, who filed a memorandum on May 28, 1957, awarding $12,500 damages to this claimant. The other claims being settled by stipulation, the court ordered the parties to submit drafts of a final decree. They did so under date of June 27, 1957, and the judge entered his final decree on July 1, 1957.

█ The mere recital of these dates shows rather unusual expedition for an admiralty case. Certainly there was no such delay as appellee relies on; after the amounts became fixed, and the right to contribution clear, there was at most a delay of just about a month before the matter was frozen in final form. Since the parties appear to have been pressing their contentions throughout, as noted below, we perceive no real delay. Hence the ruling below must rest entirely upon some failure to observe a binding requirement of procedure. And this has to be judicially fabricated, since no specific Admiralty Rule covers the situation.[1] But we do not think such a requirement consistent with the flexible procedure of admiralty or modern practice generally.

Before we consider these contentions in detail it will be well to note the amounts involved. By stipulation Costas' damage was set at $1,800, of which $900 was to be paid by petitioner. Also by agreement the claims of two of the guests were set at $2,250 and $250, in each case without interest or costs. The third guest whose claim was tried was allowed $12,500, plus costs of $274.77, making his claim $12,774.77, with interest to accrue from the date of the decree. Thus petitioner was ordered to pay the guests a total of $15,274.77, plus interest as it accrued on one of the claims; additionally it was obligated to pay $900 to Costas, but this was cancelled as an offset to contribution. So Costas, who had been found obligated to pay one-half the damage, actually was required to pay nothing, though he was denied the right to recover the $900 half of his own damage. It would seem that Costas has done rather well by virtue of his opponent's mistakes.

Now it is true that petitioner never filed a formal cross-claim or counterclaim asking specifically for contribution. Neither did Costas. After his original answer and claim for full reimbursement before the trial, Costas filed no further pleading. If petitioner is to be held to the strict standard here set it is hard to see why Costas should not be held equally derelict; after the filing of the opinion finding mutual fault, he could reasonably look forward to a decree ordering him to pay one-half of the damages of the three guests.

In actual fact, however, the position of each of the parties was made abundantly clear by the draft decrees they submitted on the two occasions as requested by the trial judge. There was no occasion to act until the judge filed his decision as to fault; up to that time each was fighting for complete exoneration. When the opinion came down it was to be expected that the court's decree would make effec-

---

1. Note Admiralty Rule 53 giving full liberty to the shipowner to contest his liability in limitation proceedings, and to claimants to contest exoneration or limitation. Admiralty Rule 56, dealing with impleader by a claimant or respondent seeking indemnity or contribution, applies only to nonparties. There are many precedents as to the flexible procedure in admiralty, its avoidance of strict pleading, its present reliance on the federal civil rules, etc. See, e. g., Untersinger v. United States, 2 Cir., 172 F.2d 298, 301–302, citing cases; Esso Standard Oil Co. v. United States, 2 Cir., 174 F.2d 182, 186; Mosher v. Tate, 9 Cir., 182 F.2d 475, approved in Note, 64 Harv.L.Rev. 164 (1950).

tive what the court had found. So Costas submitted his draft of an interlocutory decree under date of November 20, 1956, and petitioner submitted its counterdraft dated November 26, 1956. The Costas draft, beyond findings of mutual fault and an order for limitation of liability, merely ordered petitioner to pay one-half of Costas' damage and the damages of the three guests in full, while the counterdraft included the two significant paragraphs—one for setoff and one for contribution—which are quoted in the margin.[2] The interlocutory decree actually signed by the court on December 17, 1956, did not fully conform to either draft, but contained a paragraph denying Costas the aggregate of all amounts that the petitioner might have to pay to the three guests in over one-half their claims.[3] The wording is rather blind, but might well be taken as preserving the rights of the parties for the time being and until final decree.

■ Turning to the steps leading to the entry of the final decree, it appears that each party submitted a draft under date of June 27, 1957. Each of these provided for setoff of the $900 due Costas against amounts paid by petitioner to the

guests in excess of one-half their damages. Petitioner's draft then continued with the clear and explicit provision for contribution which is quoted in the margin.[4] Instead of this Costas presented a draft which the judge accepted and signed; this contained the following provision, with the italicized words written in and initialed by the judge: "2. It appearing that one-half of said payment to claimants Nicholas Torges, George Costas and Richard A. Brennan exceeds the aforesaid recovery of claimant Leonard Costas, *and no claim having been made by the petitioner against Leonard Costas*, the petitioner and said claimant Leonard Costas shall be discharged from liability to each other after said payment to said claimants has been made." Since the other provisions of the decree direct the petitioner to pay the claims found due, this effectively denies all right of contribution here or hereafter; the words added by the judge show not only the need he felt for specific explanation, but also his ground of the absolute necessity of a formal pleading presenting the claim. But the matters recited show that the petitioner had made its contentions clear beyond all dispute if, indeed,

2. "Ordered, Adjudged and Decreed that the claimant, Leonard Costas, subject to the priority in rank of recovery hereby granted to claimants Nicholas Torges, George Costas and Richard Brennan, recover from the petitioner one-half of his provable damages arising out of the matters set forth in the petition, plus or minus half the difference between his costs and the costs of the petitioner, minus the aggregate of all amounts that the petitioner may be compelled to pay to the claimants Nicholas Torges, George Costas and Richard Brennan in excess of one-half of the provable damages of said claimants; and it is further

"Ordered, Adjudged and Decreed that should the petitioner be compelled to pay to the claimants Nicholas Torges, George Costas and Richard Brennan an aggregate amount in excess of one-half of their total provable damages and also in excess of the provable damages of the claimant, Leonard Costas, the petitioner shall recover from said claimant, Leonard Costas, such excess over the provable damages of said claimant."

3. "Ordered, Adjudged and Decreed that the claimant, Leonard Costas, recover from the petitioner one-half of his provable damages arising out of the matters set forth in the petition, minus the aggregate of all amounts that the petitioner may be compelled to pay to the claimants Nicholas Torges, George Costas and Richard Brennan, in excess of one-half of the provable damages of said claimants."

4. "5. It appearing that one-half of said payment to claimants Nicholas Torges, George Costas and Richard A. Brennan exceeds the aforesaid recovery of claimant Leonard Costas, the petitioner shall recover of and from the said claimant Leonard Costas any sums paid to said claimants in excess of its one-half liability to said claimants based upon the mutual fault decision."

Paragraph 6. provided that "Upon payment and satisfaction of all the aforesaid claims as hereinabove provided, the petitioner and the claimant, Leonard Costas, shall be forever discharged from all liability arising out of the collision described in the petition."

the ultimate outcome was not forecast, or made inevitable, by the judge's finding of mutual fault.

■ While the point had been somewhat questioned earlier, recent decisions had made it thoroughly clear that cross-claims or counterclaims are recognized in a limitation proceeding and that all claims should desirably be settled in that one proceeding. British Transport Commission v. United States, 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed.2d 1234, affirming 4 Cir., 230 F.2d 139; Moore-McCormack Lines v. McMahon, 2 Cir., 235 F.2d 142; Note, Joinder and Impleader Practice in Limitation Proceedings: An Expanded Concourse for Admiralty Litigants, 66 Yale L.J. 121 (1956). Since here the matter of divided damages had been so thoroughly tried out and the issues between the parties so completely settled, there was every reason for the complete settlement of these matters below. Had the judge followed the to-be-expected course of making his decree effectuate his opinion, no further pleading would have been necessary and the matter would have been effectively closed. See Admiralty Rule 53, cited in note 1.[5] But in any event, under F.R. 15(b), a practice well known in admiralty,[6] when issues not raised by the pleadings are tried by express or implied consent of the parties, they are to be treated in all respects as if raised in the pleadings. See also F.R. 54(c), applying a similar rule with respect to matters not expressly covered by the prayer for relief. Thus if a further formal pleading be deemed necessary, the application of this principle thoroughly fills the gap.

Claimant relies on dicta in two cases as showing the need of a formal counterclaim. We are clear, however, that more has been read into the cases than they intended. In Algoma Central & Hudson Bay Ry. Co. v. Great Lakes Transit Corp., 2 Cir., 86 F.2d 708, 710, dealing with admiralty jurisdiction, Judge L. Hand relied on the absence of a counterclaim in a limitation proceeding by a respondent (which actually had another admiralty action pending) to support a holding that a counterpetition by the petitioner could not be used to supply a basis for the jurisdiction otherwise lacking. And this case was cited and distinguished in British Transport Commission v. United States, supra, 354 U.S. 129, 141, 77 S.Ct. 1103, 1109, to the effect that, since the petitioner there had not filed a counterclaim, "nothing could be recovered affirmatively." These are but the normal conclusions that a litigant is not to be accorded something he does not seek; they do not forbid the operation of F.R. 15(b) in natural circumstances where it is applicable. For that principle does not deny the need of a claim; it simply shows how such a claim is to be evidenced when a full trial has been had.

■ Petitioner here asks alternatively for the settlement of its claim in the proceeding below or for the right to

---

5. It is to be remembered that, as the issues were framed by the pleadings and tried by the court, they clearly contemplated an order requiring Costas to pay one-half of the damages. Costas was amply warned of the possible results; and his failure to assert or establish any defense to liability, by contribution or otherwise, shows that he had no valid defense. Certainly limitation of liability could not be sought, since it is evident that he possessed the requisite "privity or knowledge" to deprive him of opportunity to limit liability under 46 U.S.C. § 183(a), for he was not only the owner, but also the operator, of his negligently navigated vessel. Thus there is no impediment to complete settlement of this matter here along the lines set by the court's decision.

6. Fyfe v. Pan-Atlantic S. S. Corp., 2 Cir., 114 F.2d 72, 78, certiorari denied Pan-Atlantic S. S. Corp. v. Fyfe, 311 U.S. 711, 61 S.Ct. 319, 85 L.Ed. 462; Menefee v. W. R. Chamberlin Co., 9 Cir., 183 F.2d 720; The Roslyn, 2 Cir., 93 F.2d 278; The Minnetonka, 2 Cir., 146 F. 509, certiorari denied 203 U.S. 589, 27 S.Ct. 777, 51 L.Ed. 330; 2 Benedict on Admiralty 559 (6th Ed. 1940). See also Gulf Smokeless Coal Co. v. Sutton, Steele & Steele, 4 Cir., 35 F.2d 433, 439, rehearing denied 4 Cir., 36 F.2d 224, certiorari denied 280 U.S. 609, 50 S.Ct. 158, 74 L. Ed. 652.

bring a separate action for contribution. Claimant asserts that to allow the latter would be to permit splitting of a cause of action. Since it is the claimant who has objected to the complete settlement below, this contention seems hardly to lie in his mouth. Because there is no requirement in admiralty for compulsory counterclaims and because the right to contribution arises only after complete settlement of the original action, we doubt if the claim is well taken in any event. We agree, however, that all arguments of convenience suggest complete termination of this dispute in the proceeding below. Hence we think there is error, and the action should be remanded for the inclusion in the decree of a provision directing contribution substantially as petitioner requested in its draft of June 27, 1957.[7]

■ One issue not raised by the parties must be considered by us, since it concerns our appellate jurisdiction. It is suggested that we may not be able to afford complete relief because petitioner's notice of appeal brought before us only that portion of the final decree which denied contribution to petitioner and discharged Costas from further obligation when *petitioner* made the payments. But this is the part of the decree which injures the petitioner; and with it eliminated or reversed, the petitioner is properly back where it was before the entry. Our Rule 10(a) adopts the civil rules for taking appeals in admiralty; and F.R. 73(b) provides for designation of "the judgment or part thereof appealed from" as a means of identification, and not as a step in appellate pleading. For assignments of error and other paraphernalia of ancient appellate procedure are done away with. See F.R. 75 (d) and Advisory Committee Notes to this rule and to F.R. 73(b); Commentary, Abolition of Assignments of Error, 7 Fed.Rules Serv. 980. The Official Form 27 for Notice of Appeal permits a description of the final judgment by date only. The appellate argument is to be made by brief and oral presentation, not by appellate pleading. 7 Moore's Federal Practice 3636–3641 (2d Ed.1955). So the courts have taken a liberal view in construing notices of appeal broadly rather than overliterally. See State Farm Mut. Automobile Ins. Co. v. Palmer, 350 U.S. 944, 76 S.Ct. 321, 100 L.Ed. 823, summarily reversing 9 Cir., 225 F. 2d 876, where the court had taken exception to a notice of appeal referring to an order rather than the formal judgment below; Railway Express Agency v. Epperson, 8 Cir., 240 F.2d 189; 7 Moore's Federal Practice 3166 (2d Ed.1955). Actually petitioner has been more straightforward than Form 27 requires in showing us that there are large areas of the final decree which it does not question; we should not penalize it for these helpful disclosures. Thus we are clear that we have ample jurisdiction to order the complete remedy we think here indicated, and we conclude that we should so act.

Decree reversed for the entry of a decree as directed in this opinion.

DIMOCK, District Judge (dissenting in part).

I agree that petitioner should be permitted to seek contribution but I dissent from so much of the decision as directs that the decree provide for contribution in this limitation proceeding.

The final decree below discharged Leonard Costas, the owner of the motor boat, from liability to petitioner, the owner of the tug. It thus prevented petitioner from recovering contribution from Leonard Costas in some subsequent proceeding. Petitioner appealed "from that part of the final decree * * * which holds that claimant Leonard Costas shall be discharged from liability." The decree was incorrect in prohibiting petitioner from obtaining from Leonard Costas contribution of his share of the total damage. Petitioner was entitled to the elimination of that part of the decree from which it had appealed and to be

---

7. The decree presumably now can state the exact amounts of contribution, based on payments made by petitioner.

made free to pursue its remedy in a subsequent proceeding.

My brethren have, however, gone much farther. They have directed that the decree be refashioned so as to provide for recovery in this limitation proceeding of Leonard Costas' half share of the burden of the payments by petitioner to the other claimants. The issue whether the decree should provide for contribution by Leonard Costas was an issue upon which Leonard Costas had never had an opportunity to be heard, and, less important, was an issue not raised by petitioner's notice of appeal.

The effect of Algoma Central & Hudson Ry. Co. v. Great L. T. Corp., 2 Cir., 86 F.2d 708, as explained in British Transport Comm. v. U. S., 354 U.S. 129, 141, 77 S.Ct. 1103, is that a petitioner in a limitation proceeding cannot recover contribution without filing a counterclaim therefor. The object of the rule is not to insure the performance of an idle ceremony. Its purpose is to give the party from whom contribution is sought an opportunity to defend against the claim. For instance, he may himself wish to defend by pleading and establishing limitation of his liability. The Chickie, 3 Cir., 141 F.2d 80; The West Point, D.C.E.D.Va., 83 F.Supp. 680; cf. Cantwell v. Meade, D.C.E.D.N.Y., 120 F.Supp. 406.

My brethren say that the rule requiring the filing of a pleading is subject to the gloss that, when issues not raised in the pleadings are tried by express or implied consent of the parties, they are to be treated in all respects as if raised by the pleadings. Even so, the issue of the right of petitioner to a decree for contribution was never tried here by consent or otherwise. That right was never claimed until the settlement of the interlocutory decree. At that time and at the settlement of the final decree petitioner submitted proposed decrees which contained provisions for contribution. The submission of these proposed decrees is evidently the basis for the statement in the majority opinion that the issues between the parties had been completely settled. The statement must rest upon one or both of two conclusions: First, that, when Leonard Costas received a proposed decree in which petitioner sought to embody a determination which had never been made, it was Leonard Costas' duty to file an answer to it and ask for a hearing instead of relying on the court to refuse to resolve an unlitigated issue; or, second, that, when the court received the proposed decree seeking embodiment of an unmade determination, it was the court's duty to summon Leonard Costas to file an answer to it and the court presumably performed that duty and Leonard Costas presumably defaulted in answering.

It seems to me that neither conclusion has any basis in reality. Nothing of the kind occurs under present practice. If counsel, in examining a proposed decree, are to be expected at their peril to search through it for provisions tendering new issues and then to answer them, one more hazard and uncertainty will have been added to those now inherent in litigation. If a judge, in examining a proposed decree, is to be expected to treat it as possibly containing claims which he ought to require the opposing party to admit or deny and which, if denied, he ought to hear and determine, the function of the useful device of submission of competing forms of judgment for settlement will be so perverted that the device will put sand rather than oil in the gears of the legal machine.

It may well be that Leonard Costas would have been unable to establish a defense by way of limitation or otherwise to a claim for contribution. He has, however, never been called upon to present such a defense. No pleading warned him of any possibility that, unless he asserted and established in the limitation proceeding a defense to a claim for contribution, he would be deemed to have no valid defense to one. No issue of contribution was tried by the court. My brethren believe that, if Leonard Costas had been called upon to present his defenses to a claim for contribution and had asserted such a defense, he would

have been unsuccessful. That ought not to make any difference. Leonard Costas either had to present his defenses to contribution in the limitation proceeding or he did not. If he did not have to present them there we are not justified in precluding him from presenting them elsewhere just because we doubt his ability to establish one.

So much for the fundamental point that the decision of the majority determines against Leonard Costas an issue on which he has never been heard.

Not only have my brethren precluded Leonard Costas from asserting a defense in this proceeding but, in the course of doing so, they have made what I believe to be a material departure from procedural rules. Petitioner appealed "from that part of the final decree * * * which holds that claimant Leonard Costas shall be discharged from liability"— i.e. from the decree insofar as it prevented subsequent assertion of a claim for contribution such as was suggested in Algoma. Leonard Costas came into the Court of Appeals prepared to oppose that appeal. He goes out of the Court of Appeals having been defeated on a different appeal, an appeal from the decree insofar as it failed to direct an affirmative recovery of contribution from him. The majority brush aside Rule 73(b) F.R.Civ.P. which directs that the notice of appeal shall designate the judgment "or part thereof" appealed from by referring to the requirement as a "means of identification, and not as a step in appellate pleading." Identification for what purpose? I can see no reason for identifying the part of a judgment appealed from if the appeal from part constitutes an appeal from the whole. Surely we can rely on enough craftsmanship in the bar to indicate the extent to which the judgment of the lower court is challenged. The matter is not one of assignments of error committed in the proceedings below but rather of specification of how far the appellant wants the formal sentence of the court changed and how far he wants it left as it is. Here again I think that the court is taking a step backwards.

The necessarily complex and time consuming presentation and decision of appeals will become still more involved and protracted if the appellee must in his argument anticipate possible reversals of parts of the judgment which have not been appealed from.

I would do no more than reverse the decree insofar as appealed from and direct the District Court to eliminate the provision that Leonard Costas be discharged from liability to petitioner.